IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TODD A. KING, SR., | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:24-cv-4185** |
| | : | |
| v. | : | **Judge Algenon L. Marbley** |
| | : | |
| WARREN, WARREN CORR. INST., *et al.* | : | **Magistrate Judge Stephanie K. Bowman** |
| | : | |
| **Defendants.** | : | |
| | : | |

## OPINION & ORDER

This matter comes before this Court on Plaintiff Todd A. King, Sr.'s Objection (ECF No. 8) to the Magistrate Judge's Order and Report and Recommendation (ECF No. 4) and Plaintiff's Motion for Reconsideration (ECF No. 34).  For the reasons set forth below, Plaintiff's objections are **OVERRULED**, the Report and Recommendation is **ADOPTED**, and Plaintiff's Motion is **DENIED**.

## I. BACKGROUND

Plaintiff King, an Ohio inmate proceeding *pro se*, alleges that Warren Correctional Institution ("WCI") employees used excessive force against him, denied him adequate medical care, retaliated against him, and destroyed his property.  He brings this lawsuit under 42 U.S.C. § 1983 against several WCI employees:  Warden Harris, Deputy Warden Evans, Inspector Ledford, Investigator J.T. Hall, Lieutenant Harris, Corrections Officer Cheeks, Doctor Harlan, Sergeants Spicer, Gilland, and Burke, and an unknown Corrections Officer later identified as Karl Eltzroth. (ECF Nos. 3 at 1, 4; 8).

1

King alleges that on July 11, 2024, Defendant Hall ordered him to remove his earrings. According to King, this order was retaliation for his prior refusal to "snitch" to Hall against "corrupt staff" who had given him drugs to provide to other inmates.  King refused, and Hall "got very aggressive and loud," ordering King to "cuff up."  When King did not immediately comply, Hall attempted to handcuff King and Corrections Officer Cheeks began to assist by spraying mace in King's face.  (ECF No. 3 at 5).  King further alleges that he fell unconscious due to a heart attack, and while he was unconscious, Cheeks and Hall assaulted him by kicking and punching him.  (*Id.* at 6).

After this alleged assault began, others arrived and witnessed or participated in the violence.  According to King, Lieutenant Harris joined in by "grinding" King's face "into the concrete road" while Corrections Officer Eltzroth "broke [his] arm in several places" and the Warden observed the scrum.  (ECF Nos. 3 at 6; 8 at 6).  At some point, a captain interceded and took King to "medical," where King was treated by a nurse and Dr. Harlan.  There, King claims he learned he had a broken arm and had suffered a heart attack.  King was taken to an outside facility for medical treatment.  He was transported by non-medical personnel rather than paramedics. (ECF No. 3 at 6–7.)

King was treated for his ailments and spoke with a State Trooper, who took his statement and photographed his injuries.  (*Id.* at 7).  He later returned to the WCI, where Deputy Warden Evans allegedly removed him "from medical" despite knowing his injuries, placed him in a building with no cameras, and denied him showers and proper bedding for two months. Additionally, at some point Sergeants Spicer and Gilland destroyed King's personal property, including legal and religious materials, and conspired with Hall and other staff members to harass and retaliate against him.  (*Id.* at 8–9).  King alleges that guards accused him of fabricated

2

misconduct and that Deputy Warden Evans, conspiring with staff, denied his appeals to cover up the guards' wrongdoing, including the destruction of his property.  (*Id.* at 7).  He also alleges that Inspector Ledford knew about this retaliation and also conspired to cover it up.  (*Id.* at 7–8).

King filed suit in late 2024.  The Magistrate Judge conducted an initial screen and recommended that King be permitted to proceed only on an Eighth Amendment excessive-force claim against Defendants Hall, Cheeks, Harris, and Eltzroth in their individual capacities, and otherwise recommending dismissal of the remaining Defendants and Plaintiff's remaining claims. (ECF No. 4 at 14).

King objected and raised several arguments.  First, he contended that the Magistrate Judge improperly recommended dismissal of the remaining Defendants, as the screening order should have allowed his "excessive force claims against all Defendant's" to proceed.  (ECF No. 8 at 2). Second, King specifically challenged dismissal of Dr. Harlan, arguing that after prison medical staff had reported that he suffered a heart attack and a broken arm, Dr. Harlan violated the Eighth Amendment by having staff transport him to Franklin Medical Center, rather than calling paramedics.  (*Id.* at 6–8).  Third, King broadly argued that the remaining defendants should not be dismissed because they participated in, knew of, or helped cover up the alleged retaliation and assault.  (*Id.* at 2–8).

Defendants Cheeks, Hall, and Harris[1] filed an Answer on May 9, 2025.  (*See* ECF No. 17). They denied using excessive force, asserted that any force used was necessary to stop King's assault and obtain compliance, and raised several affirmative defenses.  (*Id.* at 2–4).  That same month, King filed multiple Motions to Compel, citing the Federal Rules of Criminal Procedure

---

[1] Defendant Eltzroth, who was initially unidentified, filed his Answer in November 2025.  (*See* ECF Nos. 36–37).

and the Supreme Court's decision in *Brady v. Maryland*.  He sought the production of medical records, x-rays, use-of-force materials, photographs, video footage, grievances, related records concerning the July 11, 2024 incident.  (ECF Nos. 16 at 1–3; 19 at 1–2).  He also moved to amend his pleadings, seeking to "attach Newly Discovered Evidence."  This evidence included medical documentation from the incident reflecting exposure to oleoresin capsicum (a chemical irritant found in mace), abrasions, a suspected fractured right humerus, splinting, and transport to the emergency room, as well as institutional paperwork including a use-of-force report, Officer Cheeks' conduct report, a grievance printout, and King's correspondence with the Correctional Institution Inspection Committee.  (ECF No. 23, at 1–3; 4–10.).

The Magistrate Judge denied King's Motions to Compel as premature and procedurally improper and permitted him to amend his Complaint with the offered documents as a one-time supplement, warning that further evidentiary supplementation would be denied.  (ECF No. 27 at 1–2).  Following the Magistrate Judge's Order, King filed a Motion for Reconsideration on the basis that his Motions were within the time specified by the Court.  (ECF No. 34 at 1–2).  He also reiterated his request to amend his Complaint yet again.  (*Id.* at 3–4).

King's Objection to the Report and Recommendation (ECF No. 8) and his Motion for Reconsideration, (ECF No. 34) are ripe for review.  The Court considers each in turn.

## II. STANDARD OF REVIEW

When a party files specific objections to a Magistrate Judge's Report and Recommendation on a dispositive matter, the Court reviews the objected-to portions *de novo*.  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).  In conducting that review, the Court considers the matter anew and may accept, reject, or modify the recommended disposition, receive further evidence, or recommit the matter to the Magistrate Judge with instructions.  Fed. R. Civ. P. 72(b)(3); 28 U.S.C.

§ 636(b)(1)(C); *United States v. Raddatz*, 447 U.S. 667, 676 (1980). The scope of *de novo* review is defined by the objections themselves: only those portions of the Report and Recommendation that are specifically objected to require *de novo* review, while general objections have the same effect as a failure to object. The party making the objections must explain the source of error. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Where the Magistrate Judge's screening recommendation would dismiss claims and parties, it is dispositive in nature. Under the Prison Litigation Reform Act, the Court must dismiss a complaint, or any portion of it, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). To state a claim, the complaint must contain sufficient factual matter, accepted as true, state a claim relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although *pro se* pleadings are liberally construed, the Court need not accept legal conclusions or unwarranted factual inferences, nor may it supply missing elements of a claim. *See id.* at 678–79.

By contrast, a Magistrate Judge's order on a non-dispositive matter is reviewed under Rule 72(a). Under that Rule, the Court must modify or set aside any part of the order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

### III. LAW AND ANALYSIS

#### A. Objections to Report and Recommendation

First, this Court considers King's objections to the Magistrate Judge's Report and Recommendation (ECF Nos. 4; 8), which recommended that King be permitted to proceed on his Eighth Amendment excessive-force claim against the officers alleged to have participated in the July 11, 2024 use of force, but in their individual capacities. The Magistrate Judge otherwise

recommended dismissal of the remaining claims against Warden Harris, Deputy Warden Evans, Inspector Ledford, Dr. Harlan, Sergeants Spicer and Gilland, and Sergeant Burke for failure to state a claim upon which relief may be granted.  (ECF No. 4, at 1–2, 8–14.).  The Magistrate Judge's recommendation was premised on a basic pleading requirement:  King must plausibly allege that each defendant, "through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676.  Supervisory status, after-the-fact awareness, or participation in grievance review, standing alone, will not support individual liability.  *See id.* at 676–77; *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

King's first objection rests on a misreading of the Report and Recommendation.  He asserts that the Magistrate Judge "found that the Plaintiff's excessive force claims against all Defendant's survived *sua sponte* review and required a response." (ECF No. 8 at 2).  The Magistrate Judge said the opposite, permitting only the excessive-force claim against Hall, Cheeks, Harris, and Eltzroth to proceed and recommending dismissal of the remaining defendants and claims.  (ECF No. 4 at 1–2, 14).  Crucially, King fails to explain *why* the Magistrate Judge erred in concluding that his allegations against the dismissed defendants do not satisfy § 1983's personal-involvement requirement.  King's pleadings alleged that Evans and Ledford knew about the purported retaliation, denied his appeals, and helped cover the incident.  (ECF No. 3 at 7–8; ECF No. 8 at 2–8).  Separately, he alleged property destruction, harassment, and related retaliation against Spicer, Gilland, and Burke.  (ECF No. 3 at 8–9; ECF No. 8 at 2–8).  And although King also points to the Warden's alleged presence during the incident (ECF No. 3 at 6), King's objection, again, does not explain why he should be permitted to proceed on a separate claim against Warden Harris under his own allegations.  (ECF No. 8 at 6).  In other words, King's objection does not engage with the

6

Magistrate Judge's core conclusion that the Complaint alleges only supervisory responsibility, after-the-fact awareness, or involvement in grievance review.  King does not grapple with the determination that there was no allegation that Warden Harris, acting in his supervisory capacity, himself used force or otherwise engaged in the sort of "active unconstitutional behavior" that would make them individually liable under § 1983.  *Crawford*, 15 F.4th at 761.  To be sure, Warden Harris stands on somewhat different footing because King alleges that Harris "stood and watch[ed]" while the force was being used.  (ECF No. 3 at 6).  But King's objection did not develop that allegation as a distinct failure-to-intervene theory, and his objection fails to explain why the Magistrate Judge erred in not allowing his claim against Warden Harris to proceed.

Second, King's objection as to the dismissal of his claim against Dr. Harlan fails for a related but distinct reason.  King argues that Dr. Harlan violated the Eighth Amendment because, after prison medical staff informed him that King had suffered a heart attack and a broken arm, Dr. Harlan had officers transport King to Franklin Medical Center rather than call paramedics.  (ECF No. 8 at 6–7).  But an Eighth Amendment medical-needs claim requires facts plausibly showing that the defendant knew of and consciously disregarded a serious medical need—it is not enough to allege that different treatment should have been provided.  *See Phillips v. Tangilag*, 14 F.4th 524, 534–35 (6th Cir. 2021) (explaining that, when a prisoner challenges the adequacy of medical care actually provided, the objective element is satisfied only if the treatment was "so grossly incompetent" or "so grossly inadequate" as to "shock the conscience" or "be intolerable to fundamental fairness"); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).  Here, King repeats his disagreement with the manner of transport, but he did not allege that Dr. Harlan perceived that transport by custody staff, rather than paramedics, created a substantial risk of serious harm and nonetheless disregarded that risk.  (ECF

7

No. 8 at 6–8).  Nor does King grapple with the Magistrate Judge's related conclusion that the Complaint does not allege any harm or detrimental effect caused by the transport decision itself. (ECF No. 4 at 9–10).

Finally, to the extent King attempts to bolster his objections with references to exhibits, reports, and anticipated proof, those materials do not cure the pleading defects identified in the Report and Recommendation.  Although such material may add detail about the July 11, 2024 incident and King's injuries, they still do not plausibly show, on a defendant-by-defendant basis, that the dismissed defendants personally used force, knowingly failed to intervene, or were deliberately indifferent to a serious medical need.  The screening question remains whether the Complaint, liberally construed, plausibly states a claim against each defendant.  *Iqbal*, 556 U.S. at 678.  On *de novo* review, this Court agrees with the Magistrate Judge that King has done so only with his claims against Defendants, Hall, Cheeks, Harris, and Eltzroth—the individual officers alleged to have personally participated in the use of force.  The Court therefore overrules King's objections on this issue.

### B.  Evidentiary Amendments to Complaint

Next, this Court considers King's request to reconsider the Magistrate Judge's September 29, 2025 Order denying his attempts to supplement the Complaint with evidence.  (ECF No. 27). This issue is non-dispositive to King's case.

First, King had requested to amend his Complaint with newly discovered evidence.  The Magistrate Judge treated King's request as a one-time motion to supplement the complaint given his *pro se* status, but observed that "Complaints are not required to include evidence" and cautioned King that the Court would not permit him to further supplement the Complaint with additional evidence, because it was unnecessary.  (ECF No. 27 at 2) (citing Fed. R. Civ. P. 8).  Now,

King argues that he should have the right to submit further amendments to supplement his Complaint with additional evidence.  (ECF No. 34 at 3).

King does not provide an explanation for his asserted right, and this Court finds none.  Rule 15 allows a party to amend a pleading to revise its factual allegations, legal claims, or requested relief, and Rule 15(d) allows a party, with leave of court, to serve a supplemental pleading based on transactions, occurrences, or events that happened after the date of the pleading to be supplemented.  Fed. R. Civ. P. 15(a), (d).  What King seeks here is different.  His motion does not tender a proposed amended complaint to revise operative allegations, nor does it identify post-Complaint events that would support supplementing his pleading.  Instead, it appends additional medical records, kites, receipts, policy excerpts, and other documents as proof.  That is why this filing is not, in substance, a true amendment or supplement.  King is attempting to expand the evidentiary record, not his pleadings.  Fed. R. Civ. P. 8(a)(2), 15(a), 15(d); *see Jackson v. City of Cleveland*, 622 F. Supp. 3d 636, 640 (N.D. Ohio 2022) ("[P]erfunctory amendment requests . . . are inadequate."); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("Normally, a party seeking an amendment should attach a copy of the amended complaint.").  Accordingly, King's motion for reconsideration fails here**.**

### C.  Compelled Discovery

Last, King requests reconsideration of his denied Motions to Compel.  King sought orders "requiring the Attorney for the Defendants to obtain and disclose information regarding the incident" at issue in "this *civil* complaint."  (ECF No. 16 at 1) (emphasis added).  Specifically, he requested medical records, incident reports, misconduct reports, outside vendor receipts, video footage and photos from the incident on July 11, 2024, and copies of all grievances and drug testing reports predating the incident.  (*Id.*; ECF No. 19 at 1–2).  But King's legal basis for this request is

9

based on *criminal* discovery rules, including those provided by *Brady v. Maryland*, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 16.

As the Magistrate Judge correctly pointed out, "this is a civil action[,] and the Rules of Criminal Procedure do not apply in this matter." (ECF No. 27 at 1). In civil suits, the parties must request discovery from one another before seeking court intervention: motions to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see generally* Fed. R. Civ. P. 26; Fed. R. Civ. P. 34. The Local Rules of this Court likewise require parties to exhaust all "extrajudicial means for the resolution of differences about discovery" before filing a discovery motion. S.D. Ohio Civ. R. 37.1. King has confused civil and criminal rules of procedure, and sought compelled discovery before requesting discovery from the opposing party.

King's argument that his motions were filed within the discovery period set by the Court, (ECF No. 34 at 1–2), is irrelevant. But timeliness was not the basis for the Magistrate Judge's ruling. The Magistrate Judge correctly determined that King's requests were procedurally improper. King identifies no clear error or legal mistake, and his motion fails for that reason.

To be sure, the distinctions between the civil and criminal rules of procedure might be less readily apparent to a *pro se* litigant who seeks civil relief while behind prison doors. And federal courts have long-afforded a special solicitude towards *pro se* prisoner litigants who remain at a structural disadvantage in pursuing claims.[2] But although a *pro se* litigant's filings are construed liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court cannot serve as a litigant's

---

[2] Indeed, here the Magistrate Judge determined—to King's benefit—that "Defendants are deemed to have been served with [King's] request on the date it was filed with the Court." (ECF No. 33 at 2 n.1).

advocate or to overlook compliance with the applicable rules of procedure. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (noting that "procedural rules in ordinary civil litigation" cannot "be interpreted so as to excuse mistakes by those who proceed without counsel"). King is **CAUTIONED** that it is his obligation to familiarize himself with the applicable Federal Rules of Civil Procedure and the Local Rules of the Southern District of Ohio.

## IV. CONCLUSION

King's objections (ECF No. 8) are **OVERRULED**, the Magistrate Judge's Order and Report and Recommendation (ECF No. 4) is **ADOPTED**, and King's Motion for Reconsideration (ECF No. 34) is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: July 15, 2026**

11